UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOPHIE HARTMAN, et al., | CASE NO. C24-0554JLR |
| Plaintiffs, | ORDER |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF CHILDREN YOUTH AND FAMILIES, et al., | |
| Defendants. | |

## I. INTRODUCTION

Before the court is Defendants Seattle Children's Hospital ("Seattle Children's"), Nancy Chase, Dr. Beth Webb Nauert, Dr. Rebecca T. Wiester, Dr. Mark S. Wainwright, Dr. Timothy J. Brei, Dr. Lusine Ambartsumyan, and Dr. Helen L. Dichek's (collectively, the "SCH Defendants") motion to dismiss Plaintiffs Sophie Hartman, M.H., and C.H.'s (collectively, "Plaintiffs") second amended complaint. (Mot. (Dkt. # 53); Reply (Dkt. # 56).) Plaintiffs oppose the SCH Defendants' motion. (Resp. (Dkt. # 55).) The court

ORDER - 1

has considered the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS the SCH Defendants' motion to dismiss.

## II. BACKGROUND

On July 1, 2024, the court granted the SCH Defendants', Defendant Virginia Whalen's, and Defendant State of Washington Department of Children, Youth and Families's ("DCYF") motions to dismiss Plaintiffs' first amended complaint. (*See generally* 7/1/24 Order (Dkt. # 46).) The court assumes the reader is familiar with that order. In relevant part, the court granted the SCH Defendants' motion on the ground that Plaintiffs had failed to plead facts sufficient to allege an absence of good faith under RCW 26.44.060, which immunizes conduct made in connection with a report or investigation of child abuse in Washington. (*See id.* at 10-16.) Plaintiffs filed their second amended complaint on July 8, 2024 (SAC (Dkt. # 47)), and the SCH Defendants again moved to dismiss Plaintiffs' claims for failure to allege facts sufficient to overcome RCW 26.44.060 (*see generally* Mot.). The SCH Defendants argue that Plaintiffs have not alleged—and cannot allege—facts sufficient to plausibly suggest that their conduct made in connection with a February 18, 2021 report of suspected medical child abuse to DCYF (the "Report") was made in anything less than good faith. (*See* Mot. at 4-8. *See generally* Report (Dkt. # 56 at ECF 19-22 (appended to Reply and included as part of

//

---

[1] The SCH Defendants do not request oral argument (*see* Mot. at 1), but Plaintiffs do (Resp. at 1). The court concludes that oral argument would not aid in its disposition of the SCH Defendants' motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

Defendant O'Rourke's certification for the determination of probable cause).) The SCH Defendants' motion is now ripe for review.

### III.   ANALYSIS

The SCH Defendants argue that Plaintiffs have failed to state a claim upon which relief can be granted because RCW 22.44.060 immunizes them from liability arising in connection with the Report. The court first decides whether to take judicial notice of the Report before considering the merits of the SCH Defendants' motion to dismiss.

**A.   Judicial Notice**

The SCH Defendants argue that Plaintiffs' second amended complaint and opposition brief make "extensive references" to the Report, therefore subjecting it to judicial notice at the pleading stage. (Reply at 1.) The court agrees.

"Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). "[I]f a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling

//

on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated by reference, and matters of which a court may take judicial notice.").

Under the incorporation by reference doctrine, "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908; *see also Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (approving incorporation by reference when "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document" (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir. 2011))). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

Here, all requirements for judicial notice are satisfied. First, Plaintiffs extensively refer to the Report in their second amended complaint. (*See, e.g.*, SAC ¶¶ 89 (quoting the Report), 141 (paraphrasing the Report), 141 (quoting the Report a describing "a number of [allegedly] untrue statements"), 230-33 (alleging why "there was no good faith in the making of the report").) Second, the Report is central to Plaintiffs' claims against the SCH Defendants, as each of Plaintiffs' claims against the SCH Defendants concern actions taken in connection with their report of suspected child abuse. (*See* SAC at 46-48 (claim for battery made in connection with "forced hospitalization" after C.H. was

removed from Ms. Hartman's custody in response to the Report), 51-53 (claim for negligent reporting of child abuse), 53-55 (claim for negligent investigation of medical child abuse), 56-58 (claim for intentional infliction of emotional distress due to C.H.'s removal from Ms. Hartman's custody), 58-59 (claim for negligent infliction of emotional distress due to C.H.'s removal from Ms. Hartman's custody), 59-62 (claim for medical malpractice made in connection with C.H.'s care at SCH leading up to the Report), 65-67 (claim for defamation concerning the SCH Defendants' statements about Ms. Hartman's fitness as a parent).)  Finally, no party questions the authenticity of the Report (*see generally* Dkt.), and the court has no reason to doubt the accuracy or authenticity of the Report as submitted by the SCH Defendants.

Because Plaintiffs have incorporated the Report by reference into their second amended complaint, the court will consider the Report when evaluating whether Plaintiffs have stated a claim upon which relief can be granted.

**B.   Motion to Dismiss**

The SCH Defendants' primary argument in support of their motion to dismiss is that RCW 26.44.060 immunizes them against all of Plaintiffs' claims.  (*See* Mot. at 4-8.) With respect to Plaintiffs' medical malpractice claim, the SCH Defendants also argue that the claim is barred by the statute of limitations.  (*Id.* at 10-12.)[2]  Plaintiffs respond that they have plausibly alleged an absence of good faith and that their medical malpractice claim is not time barred because (1) they have alleged a continuing course of treatment

---

[2] The court need not reach the SCH Defendants' additional arguments in the alternative as to why Plaintiffs' other claims should be dismissed pursuant to Rule 12(b)(6).

and (2) the discovery rule applies.  (Resp. at 10-16.)  Below, the court provides the relevant legal standard under Federal Rule of Civil Procedure 12(b)(6) before considering the parties' arguments.

   1. <u>Rule 12(b)(6) Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint upon the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) dismissal may "be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (requiring the plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (citing *Twombly*, 550 U.S. at 556)); *see also* Fed. R. Civ. P. 8(a)(2).

When considering a Rule 12(b)(6) motion, the court takes the well-pleaded factual allegations as true and views such allegations in the light most favorable to the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court need not, however, accept as true a legal conclusion presented as a factual allegation, *Iqbal*, 556 U.S. at 678, nor is the court required to accept as true "allegations

that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Furthermore, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell*, 266 F.3d at 988.

    2.   <u>RCW 26.44.060</u>

The court begins by considering whether Plaintiffs have plausibly alleged that the Defendants acted in less than good faith in making their report of child abuse to DYCF.

RCW 26.44.060 provides that

> any person participating in good faith in the making of a report pursuant to this chapter, testifying as to alleged child abuse or neglect in a judicial proceeding, or otherwise providing information or assistance, including medical evaluations or consultations, in connection with a report, investigation, or legal intervention pursuant to a good faith report of child abuse or neglect shall in so doing be immune from any civil or criminal liability arising out of such reporting or testifying under any law of this state or its political subdivisions.

RCW 26.44.060(1)(a). The statute's purpose is "to encourage the reporting of child abuse." *Whaley v. Washington*, 956 P.2d 1100, 1106 (Wash. Ct. App. 1998). Immunity attaches so long as the reporter acted in "good faith" and has not been convicted of "knowingly mak[ing] a false report of alleged abuse or neglect." *See* RCW 26.44.060(1)(b), (4). "The standard definition of good faith is a state of mind indicating honesty and lawfulness of purpose." *Whaley*, 956 P.2d at 1106. Good faith is not "based on what the reporter reasonably should have known." *Id.* Nor does it require "that information giving rise to a suspicion of child abuse be investigated or verified before it is reported." *Id.* To survive a motion to dismiss pursuant to RCW 26.44.060, the

ORDER - 7

plaintiff must "plausibly allege[] that the [defendants] did not act in good faith when they examined [the p]laintiff's children and reported their findings of abuse." *Grae-El v. City of Seattle*, No. C21-1678JLR, 2022 WL 602593, at *6-7 (W.D. Wash. Mar. 1, 2022) (granting motion to dismiss because the plaintiffs "failed to allege any facts that would defeat [the defendants'] claim to immunity under RCW 26.44.060").

Here, Plaintiffs have failed to plausibly allege that the SCH Defendants acted in anything less than good faith in investigating and reporting Ms. Hartman for suspected child abuse.

First, Plaintiffs allege that the SCH Defendants "willfully ignored" C.H.'s alternating hemiplegia of childhood ("AHC") diagnosis "when making the report" to DCYF. (Resp. at 11 (citing SAC ¶ 231).) That allegation, however, grossly mischaracterizes the Report and therefore need not be accepted as true. *See Sprewell*, 266 F.3d at 988. The SCH Defendants explicitly acknowledged C.H.'s "[c]linical diagnosis of [AHC]" in the Report and noted that "C.H. has been followed and treated by an expert in [AHC] at Duke Children's Hospital and Health Center." (Report at 2.)

Second, Plaintiffs allege that the SHC Defendants had "limited to no experience with managing" AHC and that Dr. Brei and Dr. Ambartsumyan "did not watch" certain videos purportedly documenting C.H.'s AHC symptoms. (Resp. at 11 (citing SAC ¶¶ 55, 85).) Good faith does not require expertise, however. *See Whaley*, 956 P.2d at 1106. Moreover, the SCH Defendants who reviewed the videos determined that it was "not clear from the documentation what the video-recorded episodes represent." (Report at 2.)

//

The fact that two of the SCH Defendants allegedly did not review all of Ms. Hartman's videos does not come close to suggesting an absence of good faith.

Third, Plaintiffs allege that Dr. Wiester "attempted to have Dr. Mingbunjerdsuk remove the AHC diagnosis from C.H.'s medical records," which Plaintiffs contend suggests that Dr. Wiester "wanted to scuttle" the diagnosis. (Resp. at 12 (citing SAC ¶ 110).) That allegation, however, fails to create a plausible inference that Dr. Wiester acted in less than good faith. The SCH Defendants, as documented in the Report, recognized C.H.'s diagnosis "by an expert in this disease at Duke" but nevertheless determined that C.H.'s AHC symptoms had "not been adequately objectively documented" because the SCH Defendants had not observed the "events or spells as consistently described by C.H.'s mother as being frequent and prolonged or having various characteristics of dystonia, paralysis, apnea, pain or screaming." (Report at 2.)

Fourth, Plaintiffs allege that "Nurse Chase created false reports about C.H.'s medical symptoms to Dr. Wiester" and "omitted the records she had in her possession that Duke University had observed symptoms to make it appear as if only Ms. Hartman was observing symptoms." (Resp. at 12 (citing SAC ¶ 86).) Plaintiffs accuse Ms. Chase of "suppressing medical evidence in order to further the narrative of abuse," but those allegations are not plausible. (Compl. ¶ 103.) As an initial matter, Plaintiffs never explain what "false reports" Ms. Chase allegedly made. (*See generally* SAC; Resp.) With respect to the omission of certain symptoms, Plaintiffs allege, at most, that Ms. Chase kept a log of C.H.'s symptoms but did not include in that log certain symptoms allegedly observed at Duke, which included "weakness and dystonia on C.H.'s left side,"

1  "left hand and left facial weakness," and "epileptic discharges" (SAC ¶ 73).  The Report,
2  however, noted that there was no evidence of the "hours and days of paralysis and
3  dystonia" Ms. Hartman had reported—not that C.H. had never exhibited any symptoms
4  consistent with an AHC diagnosis.  (Report at 2.)  Furthermore, despite Ms. Hartman's
5  reports of seizures, the SCH Defendants noted that C.H.'s electroencephalograms
6  ("EEGs") produced results that were "normal" or at most indicated a "seizure risk," "but
7  no seizures were noted clinically or in the EEG."  (*Id.* at 1-2.)

8        Finally, Plaintiffs allege that the SCH Defendants "acted dishonestly in making the
9  report to DCYF" by "misrepresent[ing] the state of affairs" in two ways:  (1) by stating
10  that the cause for C.H.'s symptoms "was not determined"; and (2) by stating "that the
11  reasons for the G-Tube and cecostomy tube were unknown."  (Resp. at 12.)  Plaintiffs
12  again misrepresent the Report.  As stated above, the SCH Defendants acknowledged that
13  C.H. was clinically diagnosed with AHC at Duke University.  (Report at 2.)  The
14  statement about a "cause" not being determined was in reference to "developmental
15  delay," and Plaintiffs omit the following sentence of the report in which the SCH
16  Defendants noted that "[d]uring multiple medical evaluations[,] [C.H.] has been
17  described as 'appropriate for age,' independently mobile and active, and appropriately
18  interactive."  (*Id.* at 1-2.)  Although the Report does not mention C.H.'s cecostomy tube
19  (*see generally id.*), it does refer to the G-tube.  The Report, however, does not say that the
20  reasons for the G-tube were "unknown" but rather that that the G-tube "was not
21  recommended" despite Ms. Hartman's reports of vomiting, dehydration, and a failed
22  //

swallow study. (*Id.* at 2 ("The spells as C.H.'s mother describes and records them, have never been documented.").)

In sum, none of Plaintiffs' cited allegations plausibly suggest that the SCH Defendants acted in less than good faith during their investigation of and report concerning Ms. Hartman's care for C.H. The court has thoroughly reviewed Plaintiffs' complaint and agrees with the SCH Defendants that Plaintiffs have, at most, alleged that they disagreed with the SCH Defendants' medical decisions and opinions concerning C.H.'s care and AHC diagnosis. That is not enough. *See Yuille v. State Dep't of Soc. & Health Servs.*, 45 P.3d 1107, 1111 (Wash. Ct. App. 2002) (finding "no showing of bad faith, even if the diagnosis ultimately turns out to be wrong"). Because Plaintiffs have failed to plead facts sufficient to plausibly suggest an absence of good faith under RCW 26.44.060, they have failed to overcome the SCH Defendants' statutory immunity and thus fail to state a claim upon which relief can be granted against the SCH Defendants. The court therefore concludes that the SCH Defendants are entitled to immunity and thus dismisses Plaintiffs' claims against them for battery (Count I), negligent reporting of medical child abuse (Count IV), negligent investigation of medical child abuse (Count V), intentional infliction of emotional distress (Count VII), negligent infliction of emotional distress (Count VIII), medical malpractice (Count IX), and defamation (Count XIII).

   3. <u>Medical Malpractice</u>

Plaintiffs argue that RCW 26.44.060 cannot bar their medical malpractice claim because they allege malpractice dating back to 2016, "years before an initial report of

abuse by a resident in training in 2019 or the written report SCH made to DCYF in February 2021." (Resp. at 14.) The SCH Defendants argue, however, that any medical malpractice claim premised on conduct predating actions taken in connection with the Report falls outside of Washington's three-year statute of limitations. (Reply at 4); *see* RCW 4.16.350. The court agrees with the SCH Defendants.

Plaintiffs allege periods of medical malpractice leading up to February 2021. (SAC ¶ 277.) Plaintiffs did not file this lawsuit, however, until March 15, 2024. (Compl. (Dkt. # 1-1).) Plaintiffs argue that their claim is not time barred for two reasons. First, Plaintiffs purport to have alleged a continuing course of treatment. (Resp. at 16.) Second, Plaintiffs insist the discovery rule applies. (*Id.*) The court considers—and rejects—Plaintiffs' arguments below.

The continuing course of treatment exception does not apply in this case. For that exception to apply, the alleged malpractice must have occurred "during a continuous and substantially uninterrupted course of treatment for a particular illness or condition." *Samuelson v. Freeman*, 454 P.2d 406, 410 (Wash. 1969); *see also Caughell v. Grp. Health Coop. of Puget Sound*, 876 P.2d 898, 905 (Wash. 1994) ("[W]here the tort is continuing, the claim is continuing."). Plaintiffs cannot allege that any malpractice occurred as part of a continuous and substantially uninterrupted course of treatment that extended beyond March 15, 2021—indeed, they allege the opposite. Plaintiffs allege that the first period of C.H.'s care—late 2015 to late 2016—related to treatment for cerebral palsy and static encephalopathy. (SAC ¶¶ 36-53.) Due to disagreement with Seattle Children's care for C.H., Ms. Hartman sought a second opinion from specialists at Mary

Bridge Children's Hospital ("Mary Bridge") and shortly thereafter transferred C.H.'s care to Mary Bridge. (*See id.* ¶¶ 54-62.) It was not until late 2018, over a year later, that Ms. Hartman transitioned C.H.'s care back to Seattle Children's from Mary Bridge. (*Id.* ¶ 82.) During that time, C.H. was evaluated by different providers and allegedly suffered from new medical conditions, including precocious puberty. (*See id.* ¶ 125.) The only "continuing" treatment Plaintiffs appear to allege during this time was Dr. Wiester's "child abuse medicine" as part of her "investigative work," but even if that work continued beyond February 2021—as part of, for example, C.H.'s alleged "16-day forced hospitalization"—it would undoubtedly be barred by RCW 26.44.060 as having been performed in connection with the Report. (*Id.* ¶ 158, 277; *see also id.* ¶ 87 (alleging that Dr. Wiester "suspected medical child abuse" "from day one" (capitalization altered)).) Thus, the continuing course of treatment exception cannot save Plaintiffs' claim for medical malpractice.

      The discovery rule also does not apply to Plaintiffs' medical malpractice claim. The discovery rule provides a "one year statute of limitations" that "begins to run once a plaintiff has or reasonably should have discovered the essential elements to her cause of action." *Fjetland v. Washington*, No. 52150-1-I, 2004 WL 1966042, at *2 (Wash. Ct. App. Sept. 7, 2004) (citing RCW 4.16.350 and considering medical malpractice claim). Plaintiffs fail to articulate—in either their second amended complaint or responsive brief—what they've learned that warrants application of the discovery rule. (*See generally* SAC; Resp.) The SCH Defendants are correct that the only information Plaintiffs claim to have discovered after the fact was the SCH Defendants' suspicion that

C.H. was a victim of Munchausen by Proxy by Ms. Hartman (*see* Resp. at 20), but Ms. Hartman was not the patient alleged to have suffered medical negligence—C.H. was. The one-year discovery rule cannot rescue Plaintiffs' claim. Thus, to the extent Plaintiffs assert a claim for medical negligence that predates the SCH Defendants' investigative efforts, that claim is time barred.

    4.    <u>Leave to Amend</u>

Plaintiffs do not request leave to amend (*see generally* Resp.), and the court concludes that granting Plaintiffs leave to file a third amended complaint that once again attempts to state claims against the SCH Defendants would be futile. The court therefore dismisses Plaintiffs' claims against the SCH Defendants with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS the SCH Defendants' motion to dismiss (Dkt. # 53) and DISMISSES Plaintiffs' claims against the SCH Defendants with prejudice and without leave to amend.

Dated this 17th day of September, 2024.

                                         JAMES L. ROBART
                                         United States District Judge