1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SOPHIE HARTMAN, et al.,

                                    Plaintiffs,

            v.

STATE OF WASHINGTON
DEPARTMENT OF CHILDREN
YOUTH AND FAMILIES, et al.,

                                    Defendants.

CASE NO. C24-0554JLR

ORDER

## I.    INTRODUCTION

Before the court is a motion for summary judgment filed by the City of Renton Police Department ("CRPD") and Det. Adele O'Rourke (together, the "City Defendants"). (Mot. (Dkt. # 63); Reply (Dkt. # 74).) Plaintiffs, Sophie Hartman, C.H., and M.H. oppose the motion. (Resp. (Dkt. # 68).) Plaintiffs also move to strike material in and attached to the City Defendants' reply. (Surreply (Dkt. # 78).) The court has considered the parties submissions, the balance of the record, and the applicable law.

1    Being fully advised,[1] the court GRANTS Plaintiffs' motion to strike, and GRANTS in

2    part and DENIES in part the City Defendants' motion for summary judgment.

3                           **II.    BACKGROUND**

4          By way of background, the court summarizes the allegations in Plaintiffs'

5    operative complaint (*See generally* 2d. Am. Compl), and supplements those allegations,

6    where appropriate, with undisputed facts.  Plaintiffs allege that Ms. Hartman adopted

7    C.H. and M.H. in May 2015.  (*Id.* ¶ 31.)  In June 2018, Plaintiffs moved to Renton,

8    Washington.  (*Id.* ¶ 74.)  In early 2019, a healthcare provider at Seattle Children's

9    Hospital ("SCH") reported a concern about C.H. regarding medical child abuse.  (*Id.*

10   ¶ 87.)  After a period of investigation by the Safe Child and Adolescence Network

11   ("SCAN") at SCH, Dr. Rebecca Wiester reported to the State of Washington Department

12   of Children, Youth and Families ("DCYF") that there was "concern regarding a pattern of

13   parental requests for increasingly invasive procedures based on undocumented signs and

14   symptoms reported by [Ms. Hartman]."  (*Id.* ¶¶ 88-89.)  Dr. Wiester created a care plan

15   for C.H. in late 2019.  (*Id.* ¶ 116.)

16         On February 18, 2021, Dr. Wiester directed a SCAN social worker to make a

17   referral to DCYF concerning medical child abuse.  (*Id.* ¶¶ 95, 141.)

18         On March 15, 2021, Det. O'Rourke applied for a warrant to search Ms. Hartman's

19   residence for evidence of child abuse.  (O'Rourke Decl. ¶ 10, Ex. D (Dkt. # 64-4)

20

21         [1] Only plaintiffs requested oral argument on the City Defendants' motion for summary
      judgment.  (*See* MSJ at 1; MSJ Resp. at 1.)  The court concludes that oral argument is not
22    necessary to decide the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1    ("Warrant Materials") at 35.)[2]  A judge issued a search warrant the next day.  (*Id.* at 4.)

2    Det. O'Rourke executed the warrant on March 17, 2021, and seized materials listed in the

3    warrant, including several of Ms. Hartman's electronic devices.  (*See id.* at 2-4 (listing

4    locations to search and materials to seize); *id.* at 71-72 (listing electronic devices that

5    were seized); 2d Am. Compl. ¶ 146-47.)  That same day, Det. O'Rourke also removed

6    C.H. and M.H. from Ms. Hartman's custody without a court order to do so.  (*See* Am.

7    Compl. ¶¶ 146-47; Shlansky Decl. (Dkt. # 69) ¶ 19, Ex. 16 at 1.)  After removal, C.H.

8    was involuntarily hospitalized for 16 days.  (2d Am. Compl. ¶ 157.)

9        On March 19, 2021, DCYF filed a dependency petition as to C.H. and M.H.

10    (Shlansky Decl. ¶ 19, Ex. 16 at 1.)  The juvenile court held a shelter care hearing on

11    March 22, 2021 (*id.*), and the juvenile court gave decision-making authority over C.H.'s

12    care to DCYF and to C.H.'s grandmother and aunt (2d Am. Compl. ¶ 161).[3]

13        On April 8, 2021, Det. O'Rourke applied for and obtained a warrant to search the

14    electronic devices seized from Ms. Hartman.  (Warrant Materials at 38-70 (application),

15    71-73 (warrant).)

16        In May 2021, Det. O'Rourke executed a probable cause certificate and amended

17    the certificate to include additional information requested by the King County

18    Prosecutor's Office.  (O'Rourke Decl. ¶¶ 8-9, Exs. B, C.)  Prosecutors then filed criminal

19

20        [2] The court refers to the page numbers in the CM/ECF header in discussing the Warrant Materials.

21        [3] The dependency action lasted 14 months.  (2d Am. Compl. ¶ 176.)  Plaintiffs allege that
22    they established at trial in that action that there had been no basis to remove C.H. or M.H. from
     Ms. Hartman's home.  (*Id.* ¶ 177.)

charges against Ms. Hartman for two counts of felony assault of C.H.  (2d Am. Compl.

¶ 166.)  At some point after the charges were filed, Ms. Hartman entered an agreement

whereby SCH would control C.H.'s care until November 29, 2023, and the charges

against Ms. Hartman would be reduced to a single misdemeanor charge.  (*Id.* ¶ 179.)

After that date had passed, the prosecutor's office dropped the misdemeanor charge, and

Ms. Hartman regained medical decision-making authority over C.H.'s care.  (*Id.*)

On March 15, 2024, Plaintiffs filed their complaint in state court, and they

amended their complaint three days later.  (*See* Compl. (Dkt. # 1-1) (complaint); Mot. for

Leave (Dkt. # 22) at 2 (noting amendment in state court).)  The City Defendants removed

the action to this court on April 22, 2024.  (NOR (Dkt. # 1).)  On July 8, 2024, Plaintiffs

filed the operative second amended complaint.[4]  (*See* 2d Am. Compl.)  Plaintiffs include

six causes of action against the City Defendants:  (1) a 42 U.S.C. § 1983 claim for a

violation of the Fourth and Fourteenth right to be free from judicial deception (Count II);

(2) a § 1983 claim for a violation of the Fourth Amendment right against unlawful

searches and seizures (Count III); (3) defamation (Count XII); (4) negligent investigation

of medical child abuse (Count V); (5) intentional infliction of emotional distress (Count

VII); and (6) negligent infliction of emotional distress (Count VIII).  (*See* 2d Am. Compl.

at 46-67.)

---

[4] Plaintiffs have moved to file a third amended complaint.  (Mot. 3d. Am. Compl. (Dkt. # 79).)  The court will address this motion in a separate order.

1

### III.    DISCUSSION

2        The court first discusses Plaintiffs' motion to strike.  Next, it addresses the

3   appropriate legal standard on a motion for summary judgment and considers the City

4   Defendants' arguments as to Plaintiffs' claims under 42 U.S.C. § 1983 and as to

5   Plaintiffs' state tort law claims.

6   **A.    Motion to Strike**

7        In their surreply, Plaintiffs move to strike argument in the City Defendants' reply

8   that Plaintiffs assert is based upon new factual material.  (Surreply at 1-3 (citing Reply at

9   4-5, 7-10.))  They also seek to strike the new factual material itself, which the City

10  Defendants attach to their reply.  (*See id.* at 1 (citing 4/18/25 Jorgensen Decl. (Dkt.

11  # 75) Exs. 1-2).)  Specifically, Plaintiffs object to two assertions and related materials:

12  (1) that Det. O'Rourke reasonably believed that there was an imminent risk of harm to

13  C.H. and M.H. and was not grossly negligent in removing them from Ms. Hartman's

14  home;[5] and (2) that Plaintiffs cannot attack the search warrant in light of the *Rooker-*

15  *Feldman* doctrine and *res judicata*.  (Surreply at 1-3.)

16        When a party moves for summary judgment at the outset of discovery and later

17  uncovers new and pertinent evidence, the proper procedure is for the party to seek leave,

18  at an appropriate time, to file a successive summary judgment motion based upon the

19

20

---

21        [5] Plaintiffs only object in part to this assertion.  (*Compare* Surreply at 3 (objecting to
    Reply at 4:14-5:23 & 10:4-8), *with* Reply at 9:14-10:3 & 10:11-11:4 (argument concerning lack
22  of gross negligence and existence of imminent harm).)

1    newly discovered evidence.[6]  *See Hoffman v. Tonnemacher*, 593 F.3d 908, 910 (9th Cir.

2    2010) ("Allowing a successive summary judgment motion potentially can save all

3    concerned the far greater expenses of a trail."); *see also* Fed. R. Civ. P. 1 (courts should

4    construe the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive

5    determination of every action and proceeding").

6            Generally, "[i]t is not acceptable legal practice to present new evidence or new

7    argument in a reply brief."  *Roth v. BASF Corp.*, C07-0106MJP, 2008 WL 2148803, at *3

8    (W.D. Wash. May 21, 2008); *see also United States v. Puerta*, 982 F.2d 1297, 1300 n.1

9    (9th Cir. 1992) ("New arguments may not be introduced in a reply brief.").  If a party

10   includes improper material in or attached to a reply brief, the opposing party may request

11   that the court strike the material by filing a surreply and following the procedures in this

12   district's local rules.  *See* Local Rules W.D. Wash. LCR 7(g).

13           The court has reviewed the relevant portions of the City Defendants' reply and

14   concludes that the City Defendants have included improper material in and attached to

15   their reply.  Accordingly, the court grants Plaintiffs' motion to strike this material.

16

17

18           ────────────────

19           [6] The court has discretion to entertain a successive summary judgment motion, and, in
     exercising its discretion, the court considers the following factors:  "(1) an intervening change in
     the controlling law, (2) the availability of new evidence or an expanded factual record; and
20   (3) the need to correct a clear error or prevent manifest injustice."  *Silva v. Bacon*, No. C19-
     619RAJ-MLP, 2021 WL 673562, at *1 (W.D. Wash. Feb. 22, 2021) (quoting *Kische USA LLC v.
     Simsek*, No. C16-0168JLR, 2017 WL 5881322, at *3 (W.D. Wash. Nov. 29, 2017) (cleaned up).
21   Although "a successive motion for summary judgment is particularly appropriate on an expanded
     factual record[,]" courts must "weed out frivolous or simply repetitive motions."  *Hoffman*, 593
22   F.3d at 911.

ORDER - 6

1    **B.    Legal Standard**

2         Summary judgment is appropriate when, viewing the evidence in the light most

3    favorable to the nonmoving party, "the movant shows that there is no genuine dispute as

4    to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

5    Civ. P. 56(a); *Young v. United parcel Serv., Inc.*, 575 U.S. 206, 216 (2015).  A fact is

6    material if it "might affect the outcome of the suit under the governing law[,]" and a

7    dispute is genuine when "the evidence is such that a reasonable jury could return a

8    verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

9    (1986).

10        To carry its burden in moving for summary judgment, "the moving party must

11   either produce evidence negating an essential element of the nonmoving party's claim or

12   defense or show that the nonmoving party does not have enough evidence of an essential

13   element to carry its ultimate burden of persuasion at trial."  *Jones v. Williams*, 791 F.3d

14   1023, 1030-31 (9th Cir. 2015) (quotations omitted).  If the moving party meets its burden

15   of production, the nonmoving party must identify specific facts from which a factfinder

16   could reasonably find in the nonmoving party's favor.  *Celotex Corp. v. Catrett*, 477 U.S.

17   317, 322 (1986). "This burden is not a light one."  *In re Oracle Corp. Sec. Litig.*, 627

18   F.3d 376, 387 (9th Cir. 2010).  The opposing party "must do more than simply show that

19   there is some metaphysical doubt as to the material facts."  *Scott v. Harris*, 550 U.S. 372,

20   380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

21   586 (1986)).  A "party asserting that a fact cannot be or is genuinely disputed must

22   support the assertion by . . . citing to particular parts of materials in the record[.]"  Fed. R.

1  Civ. P. 56(c)(1)(A); *see also* Local Rules W.D. Wash. LCR 10(e)(6) ("Citations to

2  documents already in the record . . . must include a citation to the docket number and the

3  page number[.]").

4  **C.    Plaintiffs' Federal Constitutional Claims**

5          The court first discusses the standard for qualified immunity, and then turns to the

6  City Defendants' arguments concerning Plaintiffs' allegations of constitutional violations

7  and claims under 42 U.S.C. § 1983.

8          1.  Qualified Immunity

9          "Qualified immunity gives government officials breathing room to make

10  reasonable but mistaken judgments about open legal questions.  When properly applied, it

11  protects 'all but the plainly incompetent or those who knowingly violate the law.'"

12  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 355,

13  341 (1986)).  In resolving a government official's claim of qualified immunity, a court

14  must decide whether (1) there is a violation of a constitutional right; and (2) whether the

15  right at issue was "clearly established[.]"  *See Pearson v. Callahan*, 555 U.S. 223, 232

16  (2009); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818  (1982) (noting that a police

17  officer cannot be held liable if the alleged conduct "does not violate clearly established

18  statutory or constitutional rights of which a reasonable person would have known").  To

19  be clearly established, a right's contours "must be sufficiently clear that a reasonable

20  official would understand that what he is doing violates that right."  *Los Angeles Police*

21  *Protective League v. Gates*, 907 F.2d 879, 887 (9th Cir. 1990) (cleaned up).  Courts have

22  discretion in deciding "which of the two prongs of the qualified immunity analysis should

1    be addressed first in light of the circumstances in the particular case at hand." *Pearson*,

2    555 U.S. at 236.

3         2.  Count II – Judicial Deception

4         There is a cause of action under 42 U.S.C. § 1983 for violations of the Fourth and

5    Fourteenth Amendments based on judicial deception in the context of child custody

6    proceedings and removal orders. *See Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 799

7    9th Cir. 2024).  To prevail on such a claim, a plaintiff must show "(1) a misrepresentation

8    or omission (2) made deliberately or with a reckless disregard for the truth, that was (3)

9    material to the judicial decision." *Id.*; *see also Spencer v. Peters*, 857 F.3d 789, 798 (9th

10   Cir. 2017) (discussing claim for "deliberate fabrication of evidence by a state official[,]"

11   which requires a plaintiff to prove that "(1) the defendant official deliberately fabricated

12   evidence[,] and (2) the deliberate fabrication caused the plaintiff's deprivation of

13   liberty").  Judicial deception, or, more broadly, deliberate fabrication of evidence, can

14   include conduct such as continuing an investigation despite knowing that the subject of

15   the investigation is innocent, or preparing an affidavit despite knowing that the material

16   averred is false. *See Chism v. Washington*, 661 F.3d 380, 387 (9th Cir. 2011); *Gausvik v.*

17   *Perez*, 345 F.3d 813, 817 (9th Cir. 2003).  It can also include intentionally omitting

18   pertinent information from an affidavit that is within the affiant's personal knowledge, or

19   otherwise acting with reckless disregard for the truth. *See Chism*, 661 F.3d at 387-88.

20   Judicial deception and deliberate fabrication do not, however, encompass mere

21   carelessness, negligence, or mistakes. *See Gausvik*, 345 F.3d at 817; *see also Scanlon*, 92

22

F.4th at 799 (requiring that a misrepresentation or omission be "made deliberately or with reckless disregard for the truth" (citation omitted)).

The City Defendants argue, in pertinent part, that no reasonable jury could find a constitutional violation on the record here because Plaintiffs cannot show that Det. O'Rourke deliberately fabricated evidence that led to the removal of M.H. and C.H.[7] (*See* MSJ at 11-12; Reply at 6-7.)  The court agrees with the City Defendants that the evidence shows that Det. O'Rourke relied upon a letter from Dr. Wiester in applying for search warrants and executing a probable cause certificate, and that she quoted Dr. Wiester's letter *verbatim* in her applications and probable cause certificate.[8]  (O'Rourke Decl. ¶¶ 8-10, Exs. B-D.)  The evidence also shows that Det. O'Rourke detailed other aspects of her investigation, including her review of C.H.'s medical records and her interviews with C.H.'s educators.  (*Id.*)  Therefore, the City Defendants have met their initial burden of production in moving for summary judgment by pointing to evidence negating the allegation that Det. O'Rourke engaged in judicial deception or deliberately fabricated evidence.

---

[7] The court observes that, in their motion for summary judgment, the City Defendants conflate the standards for summary judgment and the standards for dismissal under Federal Rule of Civil Procedure 12(b)(6).  (*See* MSJ at 6-7, 10.)  The court interprets the City Defendants' arguments as addressing summary judgment because the City Defendants style their motion as one for summary judgment and rely upon evidence outside the operative complaint (*see* O'Rourke Decl. ¶¶ 2-10, Exs. A-D; Reply at 6-7), and because Plaintiffs do the same in response (*see* Resp. at 4-10, 15-17).

[8] Det. O'Rourke states that she routinely relies "on medical professionals who are experts[,]" including the medical professionals at SCH, because she lacks "complex medical training[.]"  (O'Rourke Decl. (Dkt. # 64) ¶¶ 5-7.)

1      In response, Plaintiffs argue that Det. O'Rourke conducted her investigation with

2  insufficient care, asserting that she "simply mimicked" the information provided by Dr.

3  Wiester and, more broadly, failed to conduct a "real investigation" by largely copying

4  information from other sources and representing that the underlying information was true.

5  (Resp. at 4-9.)  Plaintiffs also assert that Det. O'Rourke failed to speak with certain of

6  C.H.'s healthcare providers, and they take issue with Det. O'Rourke's interpretation and

7  understanding of what they claim are C.H.'s "complicated medical records[.]"  (*Id.*)  For

8  instance, Plaintiffs contend that Det. O'Rourke was incorrect when she wrote that it was

9  "not clear if C.H. has been diagnosed by a medical professional with cerebral palsy or a

10  seizure disorder[.]"  (*Id.* at 15).

11      Deliberate fabrication, however, requires more than a showing that Det. O'Rourke

12  conducted a deficient or careless investigation, that she did not fully understand complex

13  medical records, or that her statements included errors.  *See Gausvik*, 345 F.3d at 817; *see*

14  *also Scanlon*, 92 F.4th at 799-805 (considering whether a reasonable trier of fact could

15  find misrepresentations "material to the judicial decision" (citation omitted)).  Plaintiffs

16  have failed to identify specific facts showing that Det. O'Rourke either knew that one of

17  her statements was false or that she made such statement with reckless disregard for its

18  truth.  (*See generally* Resp.)  To the contrary, Det. O'Rourke routinely qualified the

19  statements in her warrant applications and probable cause certificate, explaining that she

20  was recounting and relying upon the opinions and statements of the SCAN team at SCH.

21  (*See, e.g.*, Warrant Materials at 33 (summary section noting, in pertinent part, that

22  "according to Dr. Wiester and the SCAN team[,]" C.H. was subjected to unnecessary

1    medical procedures, and "that this pattern of behaviors by [Ms.] Hartman has resulted in

2    unnecessary medical testing, medication, procedures, surgeries, and had been debilitating

3    to C.H").)

4          Moreover, even assuming that Det. O'Rourke also made mistakes in interpreting

5    complex medical records, the significant additional support provided in her declaration

6    renders those mistakes immaterial.  Specifically, Det. O'Rourke's submissions also

7    included, for instance, a lengthy account of the *verbatim* observations and opinions of Dr.

8    Wiester detailing alleged neglect of, and unnecessary medical treatments for, C.H.;

9    independent interviews with C.H.'s educators who reported that they did not observe the

10   symptoms in C.H. cited by Ms. Hartman; and online videos of C.H., apparently posted by

11   Ms. Hartman, that contradicted the symptoms reported by Ms. Hartman.  (*See, e.g.*,

12   Warrant Materials at 7-16 (SCAN letter from Dr. Wiester); 23, 29-31 (interviews with

13   employees at C.H.'s schools); 24 & n.1 (online videos).)  In this context, no reasonable

14   factfinder could find the asserted errors in Det. O'Rourke's interpretations of C.H.'s

15   medical records to be material.

16         Accordingly, the City Defendants are entitled to summary judgment on Plaintiffs'

17   claim for judicial deception.[9]

18

19

20   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

21         [9] Because the court grants summary judgment in favor of the City Defendants based upon
     the record evidence concerning whether Det. O'Rourke violated constitutional prohibitions on
     judicial deception and deliberate fabrication of evidence, the court does not reach the remainder

22   of the parties' arguments concerning qualified immunity.

1        3.  <u>Count III – Search and Seizure of Ms. Hartman's Property</u>[10]

2        A warrant must be supported by probable cause, and it must particularly describe

3   "the place to be searched and the persons or things to be seized."  U.S. Const. amend. IV.

4   The particularity requirement guards against general searches and "prevents the seizure

5   of one thing under a warrant describing another."  *U.S. v. Cardwell*, 680 F.2d 75, 77 (9th

6   Cir. 1982) (quotations omitted).

7        Generally, even if a warrant is constitutionally invalid, officers who execute a

8   warrant are entitled to qualified immunity unless "it is obvious that no reasonably

9   competent officer would have concluded that [the] warrant should issue."  *See*

10  *Messerschmidt v. Millender*, 565 U.S. 535, 546-47 (2012) (quotation and citation

11  omitted); *see also id.* at 547 ("In the ordinary case, an officer cannot be expected to

12  question the magistrate's probable-cause determination[.]" (quoting *United States v.*

13  *Leon*, 468 U.S. 897, 898 (1984)) (cleaned up)).  There is no qualified immunity, however,

14  where an officer obtains a warrant by engaging in judicial deception.  *See Chism,* 661

15  F.3d at 393.  There is also no qualified immunity where a supporting affidavit so lacks

16  indicia of probable cause that an officer's reliance on the warrant is "entirely

17  unreasonable[.]"  *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).

18        The court has already concluded that Det. O'Rourke is entitled to summary

19  judgment on Plaintiffs' judicial deception claims.  Accordingly, the parties' remaining

20

21      [10] This count also includes a claim that the City Defendants violated Plaintiffs' rights by
    seizing C.H. and M.H.  (*Compare* 2d Am. Compl. ¶¶ 217-19 (seizure of C.H. and M.H.), *with*
22  ¶¶ 220-21 (search and seizure of Ms. Hartman's home and property).)  The court will separately
    address the seizure of C.H. and M.H.

1   dispute centers on whether the search warrants executed by Det. O'Rourke satisfy

2   constitutional requirements, and—if not—whether Det. O'Rourke is nonetheless entitled

3   to qualified immunity in relying upon the warrants.  (*See* MSJ at 15-16; Resp. at 13-14;

4   Reply at 6.)

5          The City Defendants provide copies of the search warrants that Det. O'Rourke

6   relied upon in searching Ms. Hartman and her property (*see* Warrant Materials at 2-5

7   (March 2021 warrant), 71-73 (April 2021 warrant)), and the court has carefully reviewed

8   the warrants.  The March 2021 warrant specified the suspected crimes of second-degree

9   assault of a child and attempt of the same, and it contained detailed descriptions of Ms.

10  Hartman and her residence.  (*Id.* at 2.)  It also limited the items to be seized, including, in

11  relevant part:  (1) cellular and digital communication devices "found on the person of or

12  associated with or belonging to [Ms.] Hartman[,]";(2) medical documents; (3) "journals,

13  notes, or papers that document or make mention of medical care in regards to C.H.";

14  (4) written materials "relating to illness, medicine, medical procedures, disability, or care

15  of humans"; (5) personal computer hardware;[11] and (6) medications, drugs, and

16  supplements.  (*Id.* at 3.)

17         Plaintiffs contend that the March 2021 warrant was not sufficiently particular

18  because it effectively authorized a general search of Ms. Hartman's electronic devices

19  and did not "categorize or suggest how each specific category of evidence to be seized

20  _____

21  [11] The warrant authorized law enforcement to seize electronic devices and computer
    hardware, but not to generally search those items.  (*See* Warrant Materials at 3.)  Instead, the
    warrant specified that a search, if any, would occur pursuant to a forthcoming application and
22  warrant.  (*See id*.)

1    relates to criminal activity[.]"[12]  (Resp. at 14.)  The court disagrees.  The March 2021

2    warrant was limited to evidence concerning C.H.'s health and medical treatments.

3    (Warrant Materials at 2-3.)  It also authorized only the *seizure* of communication devices

4    associated with or belonging to Ms. Hartman and her computer equipment; it did not

5    authorize a search of those devices or equipment.  (*See id*.)  Instead, a separate warrant

6    issued in April 2021 authorizing a limited search of three of Ms. Hartman's devices.  (*Id.*

7    at 71-73.)  Specifically, this separate warrant limited the search to likely evidence of the

8    suspected crimes over a relevant time period.  (*See id.* at 71-72 (authorizing a search and

9    seizure, in relevant part, of the following information:  (1) depictions of C.H.;

10    (2) evidence of internet searches related to medical conditions, symptoms, diagnoses, or

11    treatments; and (3) evidence of financial records regarding fundraisers, disability support,

12    government support, financial resources, and donations related to Ms. Hartman or C.H).)

13         In sum, the search warrants are issue are not constitutionally deficient, and, in

14    relying upon the warrants, Det. O'Rourke has qualified immunity.  The court grants

15    summary judgment in favor of the City Defendants.

16

17

18    ───────────────

     [12] Plaintiffs do not argue that the warrants were not supported by probable cause, except
19    to the extent that they argue that Det. O'Rourke engaged in judicial deception.  (*See generally*
     Resp. at 13-17.)  Upon its own review of Det. O'Rourke's applications, the court concludes that
20    no reasonable factfinder could find that the warrants did not issue upon probable cause.
     Det. O'Rourke provided ample information concerning suspected criminal conduct from a
21    variety of sources, including *verbatim* and highly-detailed opinions from medical professionals
     who interacted with C.H.  *See Anderson v. City of Pasadena*, 78 F.3d 591 (9th Cir. 1996)
22    (concluding that a warrant was supported by probable cause based upon an "impressively
     detailed and specific" warrant application).

ORDER - 15

1      4.   Count III – Seizure of C.H. and M.H.

2          "Officials may remove a child from the custody of its parent without prior judicial

3   authorization only if the information they possess at the time . . . provides reasonable

4   cause to believe that [(1)] the child is in imminent danger of serious bodily injury[,] and

5   [(2)] that the scope of the intrusion is reasonably necessary to avert that specific injury."

6   *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000).  "An indictment or serious

7   allegations of abuse which are investigated and corroborated usually gives rise to a

8   reasonable inference of imminent danger."   *Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir.

9   1997).  Typically, reasonable cause is a question of fact for a jury.  *See McKenzie v.*

10  *Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984).  For purposes of a qualified immunity

11  analysis, the law is clearly established that extra-judicial removal is prohibited absent

12  reasonable cause and a reasonably necessary scope.  *See Rogers v. Cnty. of San Joaquin*,

13  487 F.3d 1288, 1297 (9th Cir. 2007).

14         Det. O'Rourke removed C.H. and M.H. from Ms. Hartman without a court order.

15  (Shlansky Decl. ¶ 19, Ex. 16 at 1.)  The City Defendants do not provide any evidence that

16  M.H. was in imminent danger.  (*See generally* MSJ at 15-16; Warrant Materials.)  As to

17  C.H., the City Defendants provide the contents of a letter from Dr. Wiester, dated

18  February 18, 2021, detailing serious allegations of medical child abuse against Ms.

19  Hartman, including causing C.H. to undergo unnecessary medications, procedures, and

20  surgeries.  (*See* Warrant Materials at 7-16 (incorporating the contents of the letter).)  The

21  letter stated that it was "written with collaboration and endorsement" of four other

22  medical providers involved in C.H.'s care.  (*Id.* at 15.)

1    Even assuming without deciding, however, that the City Defendants have met

2    their burden of production in moving for summary judgment as to the existence of

3    imminent danger as to C.H., Plaintiffs identify other facts in the record from which a

4    factfinder could reasonably find that Det. O'Rourke did not have reasonable cause to

5    believe that C.H. was in imminent danger at the time of removal.  Specifically, in

6    testifying at trial in the dependency action, Det. O'Rourke indicated that there was no

7    emergency at Ms. Hartman's residence when she removed the children.  (*See* Shlansky

8    Decl. ¶¶ 5-6, Ex. 2 at 144:22-25; Ex. 3 at 128:22-25.)  There was also a delay of several

9    weeks between Dr. Wiester's letter and the removal.  (*See* Warrant Materials at 4, 7.)  As

10   to CRPD's potential liability for the removal, Plaintiffs quote a CRPD policy purporting

11   to authorize removal "when no other effective alternative is reasonably available and

12   immediate action reasonably appears necessary to protect the child."  (*See* Resp. at 21

13   (quoting Renton Police Department Policy Manual, Policy 315.6).)[13]

14   Accordingly, viewing the evidence in the light most favorable to Plaintiffs, the

15   court concludes that a genuine dispute of material fact precludes summary judgment on

16   Plaintiffs' claims concerning removal of C.H. and M.H.  The court denies the City

17   Defendants' motion for summary judgment as to this claim.

18

19

---

20   [13] For purposes of this order, the court takes judicial notice of CRPD's Policy 315.6, on
21   Plaintiffs' request, because the policy is not subject to reasonable dispute and is readily available
     online on the City of Renton's website.  https://www.rentonwa.gov/Government/Departments-
     and-Offices/Police/Police-Transparency/Department-Policies; *see also* Fed. R. Civ. P. 201
22   (governing judicial notice of facts).

1    **D.     State Law Claims**

2         The court first discusses Plaintiffs' defamation claim, and then turns to the City

3    Defendants' statutory immunity arguments as to Plaintiffs' state law claims of negligent

4    investigation of medical child abuse, intentional infliction of emotional distress ("IIED"),

5    and negligent infliction of emotional distress ("NIED").

6         5.    Count XII – Defamation

7         In Washington, defamation claims are subject to a two-year statute of limitations.

8    *See* RCW 4.16.100; *Eastwood v. Cascade Brod. Co.*, 722 P.2d 1295, 1296 (Wash. 1986).

9    Plaintiffs filed this lawsuit on March 15, 2024 (*see* Compl.), almost three years after the

10   removal of C.H. and M.H., the initiation of the state court dependency action, and any

11   statements by the City Defendants concerning the removal.  (*See* Shlansky Decl. ¶ 19, Ex.

12   16 at 1.)  The City Defendants observe that the applicable two-year statute of limitations

13   therefore bars Plaintiffs' defamation claims.  (MSJ at 26.)  In response, Plaintiffs concede

14   that "[a]fter reviewing the evidence supporting Plaintiffs' claim for defamation as to

15   CRPD and Detective O'Rourke, Plaintiffs have determined that there is inadequate

16   evidence to support that claim in light of the City Defendants' statute of limitations

17   argument."  (Resp. at 23 n.7.)  Accordingly, the court grants summary judgment in favor

18   of the City Defendants on Plaintiffs' defamation claim.

19

20

21

22

6. <u>Counts V, VII, And VIII – Statutory Tort Immunity for Negligent Investigation of Medical Child Abuse, IIED, and NIED</u>

RCW 4.24.595 provides a limited grant of immunity to governmental entities and, in pertinent part, their officers, agents, and employees from tort liability for their acts or omissions in emergent placement investigations:

> Governmental entities, and their officers, agents, employees, and volunteers, are not liable in tort for any of their acts or omissions in emergent placement investigations of child abuse or neglect . . . including, but not limited to, any determination to leave a child with a parent, custodian, or guardian, or to return a child to a parent, custodian, or guardian, unless the act or omission constitutes gross negligence. Emergent placement investigations are those conducted prior to a shelter care hearing[.]

RCW 4.24.595(1); *see also* RCW 26.44.280 (extending the grant of immunity in RCW 4.24.595 to governmental entities and their officers, agents, employees from claims by parents, custodians, or guardians accused of abuse or neglect). Pursuant to this grant of immunity, governmental entities and their officers, agents, and employees are immune from liability in emergent placement investigations, except for grossly negligent conduct or omissions. *See Desmet v. State*, 514 P.3d 1217, 1225-26 (Wash. 2022) (citing RCW 4.24.595(1)).

The City Defendants argue that they have statutory immunity from Plaintiffs' state tort claims concerning Det. O'Rourke's removal of C.H. and M.H.[14] (MSJ at 17-18; Reply at 9-11.) In support, the City Defendants observe that the removal occurred before

---

[14] The court does not reach the City Defendants' argument, as to Plaintiffs' IIED and NIED claims, that there is no genuine dispute of material fact that the City Defendants did not engage in extreme and outrageous conduct. (Reply at 12-14.) The City Defendants raised this issue for the first time in reply. (*See generally* MSJ at 23-24); *see also Puerta*, 982 F.2d at 1300 n.1 ("New arguments may not be introduced in a reply brief.").

ORDER - 19

1    the shelter care hearing and accordingly was part of Det. O'Rourke's emergent placement

2    investigation.  (*See* Reply at 9; *see also* Shlansky Decl. ¶ 19, Ex. 16 at 1 (date of shelter

3    care hearing).)  The City Defendants also argue that Det. O'Rourke satisfies the criteria

4    for statutory immunity because her conduct was not grossly negligent; instead, she relied

5    upon the opinions of C.H.'s healthcare providers at SCH, reviewed C.H.'s medical

6    records, and interviewed other individuals who interacted with C.H. before removing

7    C.H. and M.H. from Ms. Hartman's home.  (MSJ at 19-21; Reply at 10-11.)

8        Plaintiffs, however, identify facts in the record from which a factfinder could

9    reasonably find that Det. O'Rourke was grossly negligent in investigating allegations of

10   medical child abuse and in removing C.H. and M.H.  During her investigation,

11   Det. O'Rourke did not interview treating physicians at Mary Bridge Hospital who were

12   involved in diagnosing C.H. with a condition that could have warranted at least some of

13   C.H.'s medical treatments—even though Det. O'Rourke had access to C.H.'s medical

14   records.  (Shlansky Decl. ¶¶ 7, 11, Ex. 4 at 103:17-20 & Ex. 8 at 80:17-19 (testimony

15   from these physicians, at trial in the dependency action, that Det. O'Rourke did not

16   interview them).)  As the court has already discussed, there was also a delay of several

17   weeks between Dr. Wiester's letter and Det. O'Rourke's removal of C.H. and M.H.  (*See*

18   Warrant Materials at 4, 7.)  Additionally, as to the removal of C.H. and M.H. itself,

19   Det. O'Rourke indicated in her trial testimony during the dependency action that there

20   was no emergency at Ms. Hartman's residence at the time.  (*See id.* ¶¶ 5-6, Ex. 2 at

21   144:22-25; Ex. 3 at 128:22-25.)

22

1    In sum, viewing the evidence in the light most favorable to Plaintiffs, the court

2  concludes that a genuine dispute of material fact concerning gross negligence precludes

3  summary judgment on the issue of statutory immunity for Plaintiffs' state tort claims.

## IV.    CONCLUSION

5    For the foregoing reasons, the court GRANTS Plaintiffs' motion to strike (Dkt.

6  # 78) and GRANTS in part and DENIES in part the City Defendants' motion for

7  summary judgment (Dkt. # 63) as follows:

8    1.  The court GRANTS summary judgment in favor of the City Defendants as to

9  Plaintiffs' claims of judicial deception (Count II); unlawful search and seizure of Ms.

10  Hartman's home and property (Count III); and defamation (Count XII).

11    2. The court DENIES the City Defendants' motion for summary judgment as to

12  Plaintiffs' claims of unlawful seizure of C.H. and M.H. (Count III); negligent

13  investigation of medical child abuse (Count V); IIED (Count VII); and NIED (Count

14  VIII).

15    Dated this 10th day of June, 2025.

JAMES L. ROBART
United States District Judge